# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES II LLC,<br><br>Plaintiff,<br><br>v.<br><br>CRICKET COMMUNICATIONS, INC.,<br><br>Defendant,<br><br>and<br><br>ERICSSON INC. AND TELEFONAKTIEBOLAGET LM ERICSSON,<br><br>Intervenors. | Civil Action No. 14-1230-LPS<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Pursuant to the Court's Order dated September 8, 2014 (D.I. 41), Plaintiff Intellectual Ventures II LLC ("Intellectual Ventures II"), for its Complaint against Defendant Cricket Communications, Inc. ("Cricket"), hereby alleges the following:

## PARTIES

1. Intellectual Ventures II is a Delaware limited liability company with its principal place of business located in Bellevue, Washington.

2. Defendant Cricket Communications, Inc. ("Cricket") is a Delaware company with its principal place of business at 5887 Copley Drive, San Diego, CA 92111. Cricket is a wholly owned subsidiary of Leap Wireless International, Inc., a corporation organized and existing under the laws of Delaware with its principal place of business at 5887 Copley Drive, San Diego, CA 92111.

## NATURE OF THE ACTION

3.      This is a civil action alleging infringement of U.S. Patent No. 6,370,153; U.S. Patent No. 5,963,557; U.S. Patent No. 8,310,993; U.S. Patent No. 7,269,127; U.S. Patent No. 7,848,353; U.S. Patent No. 8,396,079; U.S. Patent No. 7,787,431; and U.S. Patent No. 7,385,994 (the "Patents-in-Suit"), under the U.S. Patent Laws, 35 U.S.C. § 1 *et seq*.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the U.S. patent laws, including 35 U.S.C. § 271 *et seq*.

5.      This Court has personal jurisdiction over Cricket because it has committed acts of infringement in this District in violation of 35 U.S.C. § 271, and has placed infringing products into the stream of commerce with the knowledge and/or understanding that such products are used and sold in this District.  These acts have caused and continue to cause injury to Intellectual Ventures II within the District.  Cricket derives revenue from the sale of infringing services and products distributed within the District, and/or expects or should reasonably expect its actions to have consequences within the District, and derives substantial revenue from interstate and international commerce.

6.      Cricket maintains places of business within the District from which it sells products or services to residents of the District.  Additionally, Cricket provides telecommunications services to customers through base stations, switching equipment and other components of their telecommunications networks, which are located in the District.

7.      Further, Cricket is subject to this Court's jurisdiction by virtue of its incorporation in Delaware and its availing itself of the laws and protections of this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

**THE PATENTS-IN-SUIT**

9. Paragraphs 1-8 are reincorporated by reference as if fully set forth herein.

10. On April 9, 2002, the PTO issued U.S. Patent No. 6,370,153 ("the '153 Patent"), titled "Method and Apparatus for Reserving Resources of One or More Multiple Access Communication Channels." The '153 Patent is attached hereto as Exhibit A.

11. Intellectual Ventures II owns all substantial right, title, and interest in the '153 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

12. On October 5, 1999, the PTO issued U.S. Patent No. 5,963,557 ("the '557 Patent"), titled "High Capacity Reservation Multiple Access Network with Multiple Shared Unidirectional Paths." The '557 Patent is attached hereto as Exhibit B.

13. Intellectual Ventures II owns all substantial right, title, and interest in the '557 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

14. On November 13, 2012, the PTO issued U.S. Patent No. 8,310,993 ("the '993 Patent"), titled "Acknowledging Communication in a Wireless Network." The '993 Patent is attached hereto as Exhibit C.

15. Intellectual Ventures II owns all substantial right, title, and interest in the '993 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

16. On September 11, 2007 the PTO issued U.S. Patent No. 7,269,127 ("the '127 Patent"), titled "Preamble Structures for Single-Input, Single-Output (SISO) and Multi-Input, Multi-Output (MIMO) Communication Systems." The '127 Patent is attached hereto as Exhibit D.

17. Intellectual Ventures II owns all substantial right, title, and interest in the '127 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

18. On December 7, 2010, the PTO issued U.S. Patent No. 7,848,353 ("the '353 Patent"), titled "Method, Communication System and Communication Unit for Synchronisation for Multi-rate Communication." The '353 Patent is attached hereto as Exhibit E.

19. Intellectual Ventures II owns all substantial right, title, and interest in the '353 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

20. On March 12, 2013, the PTO issued U.S. Patent No. 8,396,079 ("the '079 Patent"), titled "Communication Units Operating with Various Bandwidths." The '079 Patent is attached hereto as Exhibit F.

21. Intellectual Ventures II owns all substantial right, title, and interest in the '079 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

22. On August 31, 2010, the PTO issued U.S. Patent No. 7,787,431 ("the '431 Patent"), titled "Methods and Apparatus for Multi-carrier Communications with Variable Channel Bandwidth." The '431 Patent is attached hereto as Exhibit G.

23. Intellectual Ventures II owns all substantial right, title, and interest in the '431 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

24. On June 10, 2008, the PTO issued U.S. Patent No. 7,385,994 ("the '994 Patent"), titled "Packet Data Queuing and Processing." The '994 Patent is attached hereto as Exhibit H.

25. Intellectual Ventures II owns all substantial right, title, and interest in the '994 Patent, and holds the right to sue and recover damages for infringement thereof, including past infringement.

## FACTUAL BACKGROUND

### Intellectual Ventures

26.     Intellectual Ventures Management, LLC ("Intellectual Ventures") was founded in 2000.  Since its founding, Intellectual Ventures has been deeply involved in the business of invention.  Intellectual Ventures creates inventions and files patent applications for those inventions; it collaborates with others to develop and patent inventions; and it acquires and licenses patents from individual inventors, universities, and other institutions.  A significant aspect of Intellectual Ventures' business is managing the plaintiff Intellectual Ventures II.

27.     Intellectual Ventures' business includes purchasing important inventions from individual inventors and institutions, and then licensing the inventions to those who need them.  Through this business, Intellectual Ventures enables inventors to reap a financial reward from their innovations, which is often a difficult task for individual inventors.

28.     Intellectual Ventures also develops its own inventions.  Intellectual Ventures has a staff of scientists and engineers who develop ideas in a broad range of fields, including agriculture, computer hardware, life sciences, medical devices, semiconductors, and software.  Intellectual Ventures has invested millions of dollars developing such ideas and has filed hundreds of patent applications on its inventions every year, making it one of the top patent filers in the world.  Intellectual Ventures also has invested in laboratory facilities to assist with the development and testing of new ideas.

29.     Intellectual Ventures develops inventions by collaborating with inventors and research institutions around the world.  For example, Intellectual Ventures has developed inventions by selecting a technical challenge, requesting proposals from inventors and institutions for inventions that would overcome the challenge, selecting the most promising ideas, rewarding the inventors and institutions for their contributions, and filing patent applications on the selected ideas.  Intellectual Ventures has invested millions of dollars in this way and has created a network of more than 3000 inventors worldwide.

### Cricket's Telecommunications Network

30. Cricket is in the business of providing mobile phones and wireless phone services to customers throughout the United States, including the state of Delaware. The future of Cricket's business and the subject of this lawsuit is Cricket's 4G Long Term Evolution ("LTE") wireless network.

31. Cricket offers access to 4G LTE networks for 21 million potential customers. Cricket plans to triple its 4G LTE coverage to around 65 million potential customers by early 2014. Cricket provides 4G LTE service in Delaware, including Wilmington, Delaware.

32. Each passing day, Cricket adds to its 4G LTE customer base by converting 3G customers to its 4G network and by taking customers from other providers. Each passing day, Cricket also competes unfairly by refusing to pay royalties for the patent rights necessary to legally employ its 4G LTE technology.

33. Cricket is aware that there are numerous patents in the LTE space. Yet, upon information and belief, Cricket has no policy in place to obtain rights from patent holders to use their 4G LTE technology. Upon information and belief, this is by design, and Cricket employs a corporate policy of ignoring the risk of patent infringement and willfully infringing 4G LTE patents. In this fashion, Cricket has been able to keep its costs down and to compete unfairly against companies who lawfully take licenses to the patents in suit.

34. In this evolving marketplace, which is highly cost-competitive, a competitor who has lawfully taken a license to the patents in suit is operating under a competitive disadvantage to Cricket which refuses to pay for the accused technology. A damage award would be insufficient to vindicate the rights of Intellectual Ventures II and its current and future licensees, and to restore the market to the condition it would have been in had Cricket taken a license.

## COUNT I

### (Cricket's Infringement of the '153 Patent)

35. Paragraphs 1-34 are incorporated by reference as if fully restated herein.

36. Cricket has infringed the '153 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services is Cricket's 4G LTE network services.

37. Intellectual Ventures II has suffered damage as a result of Cricket's infringement of the '153 Patent.

## COUNT II

### (Cricket's Infringement of the '557 Patent)

38. Paragraphs 1-37 are incorporated by reference as if fully restated herein.

39. Cricket has infringed the '557 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services is Cricket's 4G LTE network services.

40. Intellectual Ventures II has suffered damage as a result of Cricket's infringement of the '557 Patent.

## COUNT III

### (Cricket's Infringement of the '993 Patent)

41. Paragraphs 1-40 are incorporated by reference as if fully restated herein.

42. Cricket has infringed the '993 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services is Cricket's 4G LTE network services.

43. Intellectual Ventures II has suffered damage as a result of Cricket's infringement of the '993 Patent.

## COUNT IV

### (Cricket's Infringement of the '127 Patent)

44. Paragraphs 1-43 are incorporated by reference as if fully restated herein.

45. Cricket has infringed the '127 Patent, literally and/or under the doctrine of equivalents, by making, using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services is Cricket's 4G LTE network services.

46. Intellectual Ventures II has suffered damage as a result of Cricket's infringement of the '127 Patent.

## COUNT V

### (Cricket's Infringement of the '353 Patent)

47. Paragraphs 1-46 are incorporated by reference as if fully restated herein.

48. Cricket has infringed the '353 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services is Cricket's 4G LTE network services.

49. Intellectual Ventures II has suffered damage as a result of Cricket's infringement of the '353 Patent.

## COUNT VI

### (Cricket's Infringement of the '079 Patent)

50. Paragraphs 1-49 are incorporated by reference as if fully restated herein

51. Cricket has infringed the '079 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services is Cricket's 4G LTE network services.

52.     Intellectual Ventures II has suffered damage as a result of Cricket's infringement of the '079 Patent.

## COUNT VII

**(Cricket's Infringement of the '431 Patent)**

53.     Paragraphs 1-52 are incorporated by reference as if fully restated herein.

54.     Cricket has infringed the '431 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a).  Among the infringing services is Cricket's 4G LTE network services.

55.     Intellectual Ventures II has suffered damage as a result of Cricket's infringement of the '431 Patent.

## COUNT VIII

**(Cricket's Infringement of the '994 Patent)**

56.     Paragraphs 1-55 are incorporated by reference as if fully restated herein.

57.     Cricket has infringed the '994 Patent, literally and/or under the doctrine of equivalents, by using or performing one or more of the claims without authority and in violation of 35 U.S.C. § 271(a). Among the infringing services is Cricket's 4G LTE network services.

58.     Intellectual Ventures II has suffered damage as a result of Cricket's infringement of the '994 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Intellectual Ventures II respectfully requests the following relief:

a)      A judgment that U.S. Patent Nos. 6,370,153; 5,963,557; 8,310,993; 7,269,127; 7,848,353; 8,396,079; 7,787,431; and 7,385,994 are valid and enforceable.

b)      A judgment that Cricket has infringed the '153 Patent;

c)      A judgment that Cricket has infringed the '557 Patent;

    d)       A judgment that Cricket has infringed the '993 Patent;

    e)       A judgment that Cricket has infringed the '127 Patent;

    f)       A judgment that Cricket has infringed the '353 Patent;

    g)       A judgment that Cricket has infringed the '079 Patent;

    h)       A judgment that Cricket has infringed the '431 Patent;

    i)       A judgment that Cricket has infringed the '994 Patent;

    j)       An order enjoining Cricket and its officers, agents, servants and employees, privies, and all persons in active concert or participation with it, from further infringement of said patents;

    k)       A judgment that Intellectual Ventures II be awarded all appropriate damages under 35 U.S.C. § 284 for Cricket's past infringement, and any continuing or future infringement of the Patents-in-Suit, up until the date such judgment is entered, including pre and post judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Intellectual Ventures II for Cricket's infringement, an accounting:

        a.   that this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Intellectual Ventures II be awarded the reasonable attorneys' fees that they incur in prosecuting this action;

        b.   that Intellectual Ventures II be awarded costs and expenses that they incur in prosecuting this action; and

        c.   that Intellectual Ventures II be awarded such further relief at law or in equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Intellectual Ventures II hereby demands trial by jury on all claims and issues so triable.

| | |
|---|---|
| DATED:  September 26, 2014 | Respectfully submitted, |
| | FARNAN LLP |
| Of Counsel: | |
| | /s/ Brian E. Farnan |
| Martin J. Black | Joseph J. Farnan, III (Bar No. 3945) |
| DECHERT LLP | Brian E. Farnan (Bar No. 4089) |
| Cira Centre 2929 Arch Street | 919 North Market Street, 12th Floor |
| Philadelphia, PA 19104 | Wilmington, Delaware 19801 |
| (215) 994-4000 | (302) 777-0300 |
| martin.black@dechert.com | (302) 777-0301 (Fax) |
| | bfarnan@farnanlaw.com |
| Jeffrey B. Plies | |
| DECHERT LLP | |
| 300 W. 6th Street, Suite 2010 | |
| Austin, TX 78701 | |
| (512) 394-3000 | |
| jeffrey.plies@dechert.com | |
| | |
| Stephen J. Akerley | |
| Justin F. Boyce | |
| DECHERT LLP | |
| 2440 W. El Camino Real Suite 700 | |
| Mountain View, CA 94040-1499 | |
| (650) 813-4800 | |
| stephen.akerley@dechert.com | |
| justin.boyce@dechert.com | |
| | *Counsel for Plaintiff Intellectual Ventures II LLC* |